IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 14-cv-00947-RM-MJW

CENTURY SURETY COMPANY, *an Ohio corporation*,

Plaintiff,

v.

WILLIAM R. SMITH, *an individual*,
SCHNEIDER ENERGY SERVICES, INC. *n/k/a LAVIR HOLDINGS, INC., a Colorado corporation*,
LORENA GARCIA, *for herself and as the Personal Representative of the Estate of Reyes Garcia*, and
ST. PAUL FIRE & MARINE INSURANCE COMPANY, *a Minnesota corporation*,

Defendants.

---

## ORDER
## on

### DEFENDANT WILLIAM R. SMITH'S MOTION TO COMPEL PLAINTIFF TO PRODUCE CERTAIN DOCUMENTS PURSUANT TO FED. R. CIV. P. 34 AND 37
### (Docket No. 56)

### and

### PLAINTIFF CENTURY SURETY'S MOTION FOR PROTECTIVE ORDER RE: 30(b)(6) DEPOSITION NOTICE
### (Docket No. 65)

---

**MICHAEL J. WATANABE**
**United States Magistrate Judge**

William Smith and Schneider Energy Services operated a gas well in Weld County, Colorado.  In 2007, the well exploded in flames—burning and ultimately killing Reyes Garcia.  Garcia's widow sued in state court for wrongful death, winning a multimillion-dollar jury verdict well in excess of Smith's and Schneider Energy's

insurance coverage.  In that lawsuit, Smith's insurance company—Plaintiff Century

Surety—provided a defense under a reservation of rights.  *See Hecla Mining Company*

*v. N.H. Ins. Co.*, 811 P.2d 1083, 1089 (Colo. 1991).

In the separate lawsuit now before this Court, Century Surety disclaims

coverage.  Smith, Schneider Energy, St. Paul Fire & Marine Insurance Company

(Schneider Energy's insurer), and Mrs. Garcia are named as Defendants, and they have

filed various counterclaims and cross-claims.  Two discovery motions are now pending

before the Court.  The Court has reviewed the parties' filings (Docket Nos. 56, 59, & 64;

Docket Nos. 65, 66, 68, & 72), taken judicial notice of the court's file, and considered

the applicable Federal Rules of Civil Procedure, statutes, and case law.  Now being fully

informed, the Court makes the following findings of fact, conclusions of law, and orders.

### Smith's Motion to Compel Discovery

The scope of discovery in federal courts is quite broad, allowing discovery of "any

nonprivileged matter that is relevant to any party's claim or defense" so long as "the

discovery appears reasonably calculated to lead to the discovery of admissible

evidence."  Fed. R. Civ. P. 26(b)(1).  Smith has moved to compel responses to three of

his requests for the production of documents:

> 12. All DOCUMENTS submitted to, shown to or referenced by insurance
> regulatory authorities referencing language contained in the CENTURY
> POLICY.
>
> 13. All pooling agreements, reinsurance policies, reinsurance agreements
> and/or reinsurance treaties to which CENTURY is a party that may
> respond to losses suffered by SMITH or to CENTURY's liability to pay for
> SMITH's losses in whole or in part.
>
> 21. The CLAIMS FILES for the most recent 20 general liability insurance
> CLAIMS made or submitted to CENTURY or MEADOWBROOK in which

CENTURY or MEADOWBROOK referenced or relied upon any one or more of the endorsements, exclusions or other policy provisions YOU referenced or relied on to deny coverage for SMITH in the UNDERLYING CASE, including but not limited to the endorsements, exclusions or other policy provisions identified in YOUR response to Interrogatory No. 6, in denying insurance coverage or reserving its rights to deny insurance coverage. The names of insureds may be redacted.

(Docket No. 56, ¶ 10.)

## I.    RPD 12: Regulatory Documents

Smith argues that the documents submitted to regulatory agencies "may be relevant to Century [Surety]'s interpretation of its own policy forms." (Docket No. 56, at 10.) Smith does not explain why Century Surety's interpretation of its own policy forms is relevant to the claims or defenses in this case, but the Court nonetheless agrees that the requested documents are discoverable.

In Colorado, as a general rule, insurance policies are construed according to the same principles that apply to other contracts. *See, e.g.*, *Allstate Ins. Co. v. Huizar*, 52 P.3d 816, 819 (Colo. 2002). However, there is an important exception to this general rule. In most contracts, after a term is found to be ambiguous, courts will allow extrinsic evidence of the parties' subjective intentions during contract formation to be used to resolve the ambiguity. This is not the case for insurance contracts; when an insurance policy is ambiguous, the ambiguity is resolved against the insurer without resort to extrinsic evidence. *See, e.g.*, *Cary v. United of Omaha Life Ins. Co.*, 108 P.3d 288, 290 (Colo. 2005) ("Any ambiguity in an insurance policy is construed in favor of providing coverage to the insured.").[1]

---

[1] It is worth noting that the Colorado Supreme Court is not unanimous on this point. Justice Coats dissented from *Cary*, arguing that extrinsic evidence should have

4

That said, even in insurance cases *some* extrinsic evidence is admissible

*sometimes.* Colorado courts interpret contracts in two steps: first, the court must

determine whether the contract is ambiguous as a question of law; second, if the

contract is ambiguous, the court must resolve the ambiguity (ordinarily a question of fact

as to the intent of the parties). *See, e.g.*, *Meyerstein v. City of Aspen*, 282 P.3d 456,

468 (Colo. App. 2011). For most contracts, the two steps can both involve extrinsic

evidence:

> . . . In deciding whether a contract is ambiguous, a court may
> consider extrinsic evidence bearing upon the meaning of the written terms,
> such as evidence of local usage and of the circumstances surrounding the
> making of the contract. However, the court may not consider the parties'
> own extrinsic expressions of intent.
>
> Once a contract is determined to be ambiguous, its interpretation
> becomes an issue of fact for the trial court to decide in the same manner
> as other disputed factual issues. Only after a contract is deemed
> ambiguous may the trial court use extrinsic evidence to assist it in
> ascertaining the intent of the parties. . . .

*Cheyenne Mountain Sch. Dist. No. 12 v. Thompson*, 861 P.2d 711, 715 (Colo. 1993)

(internal citations and quotation marks omitted). The rule that certain types of extrinsic

evidence can be used at the first step of interpretation applies to insurance policies just

---

been used. 108 P.3d at 296. Justice Coats did so in the context of determining
whether the contract was ambiguous in the first place, and his opinion does not
necessarily suggest that extrinsic evidence *of the parties' subjective intentions* should
have been used, either in finding an ambiguity or in resolving it. But one of the cases
he cited stands for that exact proposition. *See Rocky Mountain Fuel Co. v. Providence
Wash. Ins. Co.*, 276 P.2d 551, 553 (1954). Former Chief Justice Erickson also argued,
in a concurrence, that a policy should be construed against the insurer only after
extrinsic evidence of the parties' intent has failed to resolve the ambiguity. *Ballow v.
PHICO Ins. Co.*, 875 P.2d 1354, 1368 & n.13 (Colo. 1993). But the overwhelming
majority of the court's cases, having found an ambiguity, resolve it against the insurer
without further analysis—including the majority opinions in *Cary* and *Ballow*.

as it does to other contracts, according to the Colorado Court of Appeals.[2]  *See, e.g.*,

*Hansen v. Am. Family Mut. Ins.*, ___ P.3d ___, 2013 WL 6673066 (Colo. App. Dec. 19,

2013), *cert. granted* 2014 WL 5510047 (Colo. Nov. 3, 2014); *Allstate Ins. Co. v. Juniel*,

931 P.2d 511, 516 (Colo. App. 1996); *Fire Ins. Exch. v. Rael by Rael*, 895 P.2d 1139,

1143 (Colo. App. 1995).

Thus, while it is true that (at the second step of analysis) ambiguities in an

insurance policy are construed against the insurer, it is also true that (at the first step of

analysis) certain types of extrinsic evidence can be used to determine whether an

ambiguity exists.  Here, documents submitted to insurance regulators by Century Surety

would fall under the heading of custom-and-usage evidence—a type of extrinsic

evidence that can be used in determining whether a policy is ambiguous.  The

documents are therefore discoverable.

The Court agrees with Century Surety, however, that the request should be more

limited, in time and in scope, than Smith's current request.  The Court orders that RPD

12 be limited to the policy clauses and endorsements specifically in dispute between the

parties.  The Court further orders that the parties meet and confer in good faith and

choose an reasonable time limitation; the conferral shall happen no later than 7 days

from the date of this order.  Subject to those limitations, Century Surety is hereby

ordered to produce responsive documents within 21 days of the date of this order.

---

[2] The Colorado Supreme Court is currently considering whether Colorado Court of Appeals is right.  *See Am. Family Mut. Ins. v. Hansen*, 2014 WL 5510047 (Colo. Nov. 3, 2014) (granting certiorari on the question of "[w]hether the court of appeals impermissibly relied upon extrinsic evidence to conclude that the respondent's insurance policy was ambiguous.").  Should the court come to conclusions different from those herein, the parties may seek reconsideration of this order.

## II.   RPD 13: Reinsurance Agreements

Smith argues that the production of reinsurance agreements is required both under Rule 26(a)(1)(iv), as a mandatory initial disclosure, and also under Rule 26(b), as reasonably calculated to lead to admissible evidence.  Century Surety disputes both points.  The Court agrees with Smith, at least as to the Rule 26(a) argument.  *See U.S. Fire Ins. Co. v. Bunge N. Am., Inc.*, 244 F.R.D. 638, 641 (D. Kan. 2007) ("The Court agrees that production of reinsurance agreements is required by [Rule 26(a)(1)(iv)] . . . .").  Century Surety is hereby ordered to produce documents responsive to RPD 13 within 21 days of the date of this order.

## III.   RPD 21: Similar Claim Files

RPD 21 requests the claim files from the 20 most recent examples of Century Surety (or its corporate parent) denying coverage under the same policy provisions that it relies on in this case. Smith argues that the documents might be relevant to establishing a violation of Colorado's Unfair Claims Practices Act, C.R.S. § 10-3-1104. That statute does not create a private cause of action, but it is treated as valid evidence of the standard of care in bad-faith cases, and a violation of the act can be used as evidence of unreasonable or negligent conduct by the insurer.  *Am. Family Mut. Ins. Co. v. Allen*, 102 P.3d 333, 344–45 (Colo. 2004).  Century Surety argues, to the contrary, that any such relevance would be marginal at best and insufficient to justify the burden of searching its claims files for similar cases with similar outcomes.

The Court agrees with Smith.  Although Smith does not identify what violation of the Unfair Claims Practices Act he might be able to prove with pattern-or-practice evidence, there is at least one provision that seems likely.  C.R.S. § 10-3-1104(1)(h)(I)

prohibits "[m]isrepresenting pertinent facts or insurance policy provisions relating to coverages at issue" "with such frequency as to indicate a tendency to engage in a general business practice."  If Century Surety were engaged in such a practice with respect to a policy term at issue in this case, that fact would be admissible evidence as to Smith's bad-faith claim.  And the claim files requested in RPD 21 are reasonably calculated to lead to such evidence, if it exists.

Beyond relevancy, Century Surety also argues that searching for responsive documents will be unduly burdensome and that production of the documents would invade the privacy interests of its other insureds.  Although Century Surety provides estimates of the cost it might incur to respond to RPD 21, its argument omits any discussion of whether that cost is proportional in light of the amount in controversy in this case.  *See* Fed. R. Civ. P. 26(b)(2)(C).  Several million dollars are at issue in this case—tens of millions, if the various Defendants' legal positions bear out.  (*See* Docket No. 49, at 20–24 (computation of damages in scheduling order).)  The costs suggested by Century Surety are not nearly great enough to be disproportional to the needs of the case.  And as to privacy interests, Smith has offered to accept the production of documents subject to the confidentiality provisions of the protective order in place in this case and with personally identifiable information redacted.  Further, to the extent Century Surety argues that various federal and state laws prohibit it from disclosing responsive documents, those arguments have been rejected by this Court before. *Seabron v. Am. Family Mut. Ins. Co.*, 862 F. Supp. 2d 1149, 1159 (D. Colo. 2012), *order clarified on reconsideration* (June 26, 2012).  Century Surety is hereby ordered to

produce documents responsive to RPD 21 within 21 days of the date of this order.[3]

Such documents will be subject to the protective order in place.  (Docket No. 54.)

## Century Surety's Motion to Limit Rule 30(b)(6) Deposition

Smith prepared a draft notice for a Rule 30(b)(6) deposition of Century Surety, listing 44 topics to be covered.  Century Surety objected, but Smith did not reduce the scope of the notice—rather, after consulting with his codefendants, he added 11 more topics.  Century Surety now moves for a protective order under Rule 26(c), arguing that (1) the deposition notice is overbroad and unduly burdensome on its face, and (2) individual topics are vague or otherwise improper for various reasons.[4]

## I.  Challenge to the Notice as a Whole

"A deposition under Rule 30(b)(6) differs in significant respects from the normal deposition.  To begin with, the notice of deposition must 'describe with reasonable particularity the matters for examination.'"  8A C. WRIGHT, A. MILLER, & R. MARCUS, FEDERAL PRACTICE & PROCEDURE § 2103 (3d ed. 2010).  This requirement seeks "to enable the responding organization to identify the person who is best situated to answer questions about the matter, or to make sure that the person selected to testify is able to

---

[3] RPD 21 asks for documents from Century Surety's corporate parent.  Century Surety is obligated to produce another entity's documents only if Century Surety has a legal right to those documents (for example, if the documents are maintained within the scope of a principal-agent relationship).  *See, e.g., Resolution Trust Corp. v. Deloitte & Touche*, 145 F.R.D. 108, 110 (D. Colo. 1992) ("The federal courts have universally held that documents are deemed to be within the possession, custody or control of a party for purposes of Rule 34 if the party has actual possession, custody or control of the materials *or* has the legal right to obtain the documents on demand.").

[4] In this Rule 30(b)(6) discussion, the Court will refer to "Defendants" generally, because codefendants contributed to the deposition notice and St. Paul Fire & Marine Insurance joined Smith in opposing Century Surety's motion.

respond regarding that matter." *Id.* Accordingly, there is an implicit obligation on the deponent to prepare the witness. However, the rule implies an equivalent obligation on the deposing party to "designate with painstaking specificity, the particular subject areas that are intended to be questioned." *E.E.O. C. v. Thorman & Wright Corp.,* 243 F.R.D. 421, 426 (D. Kan. 2007). "An overbroad Rule 30(b)(6) notice subjects the noticed party to an impossible task. To avoid liability, the noticed party must designate persons knowledgeable in the areas of inquiry listed in the notice. Where . . . the [deponent] cannot identify the outer limits of the areas of inquiry noticed, compliant designation is not feasible." *Reed v. Bennett,* 193 F.R.D. 689, 692 (D. Kan. 2000).

Century Surety argues that the deposition notice fails to give sufficient notice and is unduly burdensome because it contains too many topics and those topics are "mostly broad and unfocused areas of inquiry." The Court disagrees. The notice identifies 55 topics to be covered—but most of the topics are related to each other and are used redundantly to clarify and narrow the discussion. For example, topics 24 and 25 are, respectively, "[t]he identity of each 'Claims Attorney' assigned to the Claim" and "[t]he role of each 'Claims Attorney' assigned to the Claim." These could have been stated as one item, and stating them as two items does not thereby double their burden. Further, Smith could have identified this topic at a higher level of generality (*e.g.,* "Century Surety's staffing for this claim"), but instead used greater specificity—reducing the burden on Century Surety.

All of the topics in the deposition notice deal with the specific policy, claim, and litigation at issue in this lawsuit, except for a few questions dealing with Century

Surety's general practice for similar cases.  The notice is not overbroad, unfocused, or overly burdensome.

## II.  <u>Issues Common to Several Challenges to Individually Noticed Topics</u>

The bulk of Century Surety's objections to individual topics relate to some common questions.  The Court will address these questions before turning to the individual topics in the deposition notice.

### <u>*Discoverability of Legal Understandings*</u>

As to several topics, Century Surety argues that Defendants should be prohibited from inquiring into legal matters, rather than factual matters, because depositions cannot be used to develop legal theories.  The Court disagrees.  Rule 30(b)(6) depositions *can* be used to develop the deponent's legal contentions; contention interrogatories under Rule 33(a)(2) are usually more appropriate, but the choice between the two must be made on a case-by-case basis.  *See, e.g.*, *Radian Asset Assur., Inc. v. Coll. of the Christian Bros. of N.M.*, 273 F.R.D. 689 (D.N.M. 2011); *SmithKline Beecham Corp. v. Apotex Corp.*, 2004 WL 739959 (E.D. Pa. Mar. 23, 2004); *Exxon Research & Eng'g Co. v. United States*, 44 Fed. Cl. 597 (1999); *United States v. Taylor*, 166 F.R.D. 356 (M.D. N.C. 1996).  Accordingly, Century Surety is mistaken in arguing that legal topics are always off-limits in a Rule 30(b)(6) deposition.

But Century Surety's argument is also somewhat beside the point, as Defendants don't seek to ask about Century Surety's legal contentions in this case.  Rather, Defendants seek to ask about Century Surety's subjective understanding of certain legal matters—on the theory that those subjective understandings are relevant as a *factual* matter.  (*See*, *e.g.*, Doc. 68, at 7 ("Defendant is not asking for a legal opinion as

to the meaning of these provisions, but rather Defendant is requesting a deponent to testify about the language and intended meaning of Century's own policy.").)  And here, it is Defendants who are mistaken.

As to Defendants' breach-of-contract claims, as discussed above, extrinsic evidence of the parties' subjective intentions will not be admissible in this case.  Some types of extrinsic evidence are admissible in determining whether the contract is ambiguous, but not evidence of the parties' intentions; and if the policy is found ambiguous, the ambiguity will be resolved against the insurer without resort to extrinsic evidence.  Some of Defendants' questions might fall under the category of "course of dealing" or "customary usage" evidence, rather than evidence of the parties' subjective intentions—but that distinction is difficult to manage during a deposition.  And here, because Defendants will be able to develop such evidence through the production of documents ordered above, there is no need to confound the deposition with the matter.

Nor is Century Surety's subjective understanding of the policy relevant to Defendants' bad-faith claims—because third-party claims,[5] like this one, are tested by a purely objective standard.  *Compare* C.R.S. § 10-4-1113(2), *and Farmers Group Inc. v.*

---

[5] Smith is a "first-party claimant" for purposes of his statutory claims.  *D.R. Horton, Inc.-Denver v. Mountain States Mut. Cas. Co.*, No. 12-cv-01080-RBJ, 2013 WL 674032 (D. Colo. Feb. 25, 2013); *Oakland Const. Co. v. Phoenix Ins. Co.*, No. 11-cv-02652-LTB, 2013 WL 2285778, at *5 (D. Colo. May 23, 2013).  But that definition applies only to the statutory claims and is not intended to affect the common law bad-faith cause of action.  *See* C.R.S. § 10-3-1115(1)(b) ("For purposes of this section and section 10-3-1116"); C.R.S. § 10-3-1116(4).  As to the bad-faith claim, this case arises in the third-party context.  *See Goodson v. Am. Standard Ins. Co. of Wisconsin*, 89 P.3d 409, 414 (Colo. 2004); *see also Hernandez v. Am. Standard Ins. Co. of Wis.*, No. 11-cv-03076-RBJ, 2013 WL 6633392, at *2 (D. Colo. Dec. 16, 2013) ("The answer to this seeming inconsistency, if there is an answer, is that the statute defines 'first-party claimant' in a manner that arguably includes certain claims that have historically been viewed as third-party claims.").

*Trimble,* 691 P.2d 1138, 1142 (Colo. 1984) (third-party claims), *with* C.R.S. § 10-4-1113(3), *and Travelers Ins. Co. v. Savio*, 706 P.2d 1258, 1275 (Colo. 1985) (first-party claims).  Finally, Defendants' statutory claims are also subject to a purely objective standard of care.  C.R.S. § 10-3-1115(2); *Kisselman v. Am. Family Mut. Ins. Co.*, 292 P.3d 964, 973–74 (Colo. App. 2011).  Century Surety's subjective legal understandings are not relevant to any of the claims or defenses in this case.

Defendants have not purported to include any legal-contention topics in their Rule 30(b)(6) notice, and Century Surety's subjective understanding of various legal matters are not relevant.  As a result, Century Surety's motion is granted insofar as it seeks to bar inquiry into legal topics.

### *Claims Investigations as Attorney Work Product*

Century Surety argues that its factual investigation of the case became protected under the work-product doctrine on February 28, 2014—the day of the jury verdict in the underlying litigation.  In Colorado, an insurance company's factual investigation of a claim is presumed to be made in the ordinary course of business rather than in anticipation of litigation.  *Hawkins v. District Court*, 638 P.2d 1372, 1378–79 (Colo. 1982).  To establish otherwise, the insurer must show "in light of the nature of the [disputed] document and the factual situation in the particular case . . . that the document was prepared or obtained in contemplation of specific litigation."  *Id.*  This is not a bright-line test:

> . . . On the one hand a document may be prepared "in anticipation of litigation" prior to the actual commencement of litigation and, on the other, the commencement of litigation is not sufficient by itself to confer a qualified immunity from discovery on a document thereafter prepared. . . .

> . . . Thus, a showing by the insurance company that reports and statements were compiled by or under the direction of the insured's legal counsel for use in specific litigation about to be filed or for use in an upcoming trial would be conclusive evidence that these documents are trial preparation materials.  Conversely, a showing that a claims adjuster, or even a lawyer not acting as a legal counselor for the insurer, conducted an investigation of a claim, during which he compiled various reports and statements, would not be sufficient by itself to overcome the presumption of an ordinary business activity.

*Id.* Century Surety argues that this standard was met the moment the jury returned an excess verdict in the underlying litigation.

In this particular case, the Court agrees.  Most importantly, Century Surety sued Defendants Smith and Schneider Energy four years ago, disclaiming coverage for this same incident but under a different theory.[6]  That case was voluntarily dismissed without prejudice when Century Surety agreed to honor its duty to defend Smith and Schneider Energy under a reservation of rights, but the disputes between insurer and insured did not go away.  In January 2014, Smith demanded that Century Surety settle the underlying litigation for an amount within the policy limits, to no avail.  Smith hired private counsel at that time and threatened to sue for bad faith if Century Surety continued to refuse to settle, running the risk of an excess verdict.  There was little doubt, at the time the jury returned an excess verdict, that this specific litigation was imminent.  Further, the routine investigation of Smith's claim that Century Surety engaged in as part of the ordinary course of its insurance business must have ended by February 28, 2014; the Garcia accident occurred in 2007 and had been in litigation since 2009.

---

[6] The case was brought in this court and docketed as No. 10-cv-02324-WDM-KLM.

It should be noted that, apparently, Century Surety has not formally provided any notice of claim denial.  Ordinarily, the date a claim is denied is the most obvious point at which litigation becomes imminent.  *See Compton v. Safeway, Inc.*, 169 P.3d 135, 138 (Colo. 2007); *National Farmers Union Property & Casualty Co. v. District Court,* 718 P.2d 1044, 1048 (Colo. 1986).  But on this case's facts, it is clear that any further factual development undertaken by Century Surety's attorneys following the jury's excess verdict was undertaken in anticipation of this litigation with Smith.  The fact that Century Surety waited to formally notify Smith of the claim denial does not change the fact that the decision to sue Smith had already been made.

## II.   <u>Individually Noticed Topics</u>

*Topic 3*

Century Surety objects to topic 3 on the ground that it is too broad.  The Court disagrees.  The deposition notice could have been more artfully drafted—but nonetheless the Court views topics 4 through 10 as subtopics that focus the inquiry called for by topics 1 through 3.  Viewing the ten topics together, they are neither overbroad nor vague.  They give Century Surety notice that its Rule 30(b)(6) designee should be prepared to talk about why Century Surety added the clauses and endorsements at issue in this case and why Century Surety understood those provisions to apply to Defendants' business.  This is fair notice, and a relevant topic.

*Topics 5-8 & 45-48*

Century Surety asks that each of these topics be limited to factual, rather than legal, topics.  Topics 5 through 8 identify specific clauses or endorsements that Defendants wish to ask questions on; as to these, Century Surety argues that

"[Defendants] could inquire as to how a policy provision was applied to the facts of the underlying case, but nothing more."  (Docket No. 65, p. 10.)  Based on the discussion above, the Court agrees.  Defendants may ask why Century Surety added the clauses and endorsements at issue in this case and why Century Surety understood those provisions to apply to Defendants' business.  Defendants may not ask about Century Surety's understanding of the legal effect of the terms.

Similarly, topics 45 through 48 refer to Century Surety's decisions to provide a defense and whether to involve Defendant St. Paul Marine & Fire Insurance in that defense.  Defendant argues that these should be limited to factual matters, to avoid inquiry into Century Surety's legal strategies.  The Court agrees, to a point: the facts surrounding Century Surety's decisions on this topic are appropriate areas of inquiry, but as discussed above, the legal grounds for those decisions are not.  Century Surety's legal contentions shall not be developed through its Rule 30(b)(6) deposition.

*Topics 11 & 12*

As with topic 3 above, Century Surety argues that Topics 11 and 12 are too broad and too vague.  And as above, the Court disagrees; the Court views topics 13 through 39 as subtopics that focus the inquiry called for by topics 11 and 12.  Century Surety relatedly argues that the underlying dispute has taken so long to resolve that it is unrealistic to place the entire process of handling the claim at issue.  This argument is summarily rejected.

*Topics 13, 21, 22, 27, 31*

Century Surety objects to each of these topics solely on the ground that factual development undertaken after February 28, 2014, should be protected by the work

product applies.  As discussed above, the Court agrees that the work-product doctrine applies to that time period.  But nonetheless, the doctrine protects only documents and the mental impressions of attorneys; Century Surety will need to establish the applicability of the doctrine on a question-by-question basis.

*Topic 15*

Topic 15 proposes to ask Century Surety about its claims-handling practices from 2009 through 2014.  Century Surety argues that the topic is irrelevant for the preiods predating the claim and postdating the jury verdict.  This argument might be persuasive if topic 15 asked about the practices used in handling *Smith's* claim specifically—but it doesn't.  It asks about Century Surety's policies and practices in general.  Such evidence is admissible both as to Smith's bad-faith claim and as to his statutory claim as evidence of objective industry standards.  Further, the date range picked by Smith is not overbroad for this purpose.

*Topics 23, 26, & 39*

Century Surety objects to these topics on both of the grounds discussed in detail above: that it should be cut-off at the date of the jury verdict, and that it should be limited to factual, not legal, matters.  The Court repeats its holdings on these matters: factual development undertaken after February 28, 2014, is protected by the work product doctrine but Century Surety will have to establish the applicability of the privilege on a question-by-question basis; and while the facts surrounding Century Surety's decisions are appropriate areas of inquiry, the legal grounds for those decisions shall not be developed through Century Surety's Rule 30(b)(6) deposition.

*Topics 30 & 51*

Topic 30 seeks to inquire into the factual investigation performed by Century Surety before it filed its previous suit against Defendants disclaiming coverage.  Century Surety argues that the work-product doctrine applies.  Topic 31 seeks to inquire into the existence and contents of a separate "coverage" file maintained by Century Surety, distinct from the "claim" file.  Century Surety argues that the contents of the file are protected by both the work-product doctrine and attorney-client privilege.

As noted above, the factual investigation performed by an insurance company is presumed to be performed in the ordinary course of business; Century Surety will have to establish the applicability of all privileges on a question-by-question basis.

*Topic 42*

The Court agrees that topic 42, seeking to ask questions about "[a]ny documents disclosed or produced by Century in this action", should have been limited to a more specific list of documents or categories of documents.  The topic is stricken.

*Topic 43*

Topic 43 seeks to depose Century Surety on its "responses to written discovery propounded in this action."  The topic is overly broad: it does not fairly describe any actual area of factual inquiry, but rather incorporates by reference all of the topics that have been the subject of interrogatories.  The topic is stricken.

*Topic 54 & 55*

Finally, Century Surety objects to two questions about the role of particular employees, on the ground that it comes impermissibly close to disclosing attorney work-product.  For context, the two questions are part of a four-question battery:

<ol start="52">
<li>The role(s) of Sharon Gabrich, Robin Leibrock, Vicki Roberts, Daver Gervers and Jay Tuckerman with respect to the Claim.</li>
<li>The role(s) of Sharon Gabrich, Robin Leibrock, Vicki Roberts, Dave Gervers and Jay Tuckerman with respect to the Underlying Litigation.</li>
<li>The role(s) of Sharon Gabrich, Robin Leibrock, Vicki Roberts, Dave Gervers and Jay Tuckerman with respect to the Prior Coverage Action.</li>
<li>The role(s) of Sharon Gabrich, Robin Leibrock, Vicki Roberts, Dave Gervers and Jay Tuckerman with respect to the this action.</li>
</ol>

(Docket No. 65-1, p.7.)  The Court disagrees that the latter two topics justify a blanket objection.  Should Smith's questions actually ask for the mental impressions or other work product of Century Surety's attorneys, Century Surety is free to object on a question-by-question basis.  But much as attorneys' billing records are not necessarily privileged, the Court finds that it is not necessarily improper for Smith to ask for a general description of the role played by particular individuals.  Century Surety will have to establish the applicability of all privileges on a question-by-question basis.

19

## ORDER

For the foregoing reasons, it is hereby **ORDERED** that:

(1)    Defendant William R. Smith's Motion to Compel Plaintiff to Produce Certain Documents Pursuant to Fed. R. Civ. P. 34 and 37 (**Docket No. 56**) is **GRANTED IN PART and DENIED IN PART**, as set forth more fully above;

(2)    Plaintiff Century Surety's Motion for Protective Order Re: 30(b)(6) Deposition Notice (**Docket No. 65**) is **GRANTED IN PART and DENIED IN PART**, as set forth more fully above; and

(3)    The Court finds that an award of expenses would be unjust under the circumstances; therefore each party shall pay its own attorneys' fees and costs under Rule 37(d)(3).

Dated: January 21, 2014                    */s/ Michael J. Watanabe*
      Denver, Colorado                    Michael J. Watanabe
                                            United States Magistrate Judge